```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| **RACHEL HISKES, et. al.,**<br><br>    Plaintiffs<br><br>        v.<br><br>**JOSE FIGUEROA SANCHA, et al.,**<br><br>    Defendants | **CIVIL NO.** 10-2246 (JAG) |

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Before the Court stands Jose E. Figueroa Sancha ("Figueroa Sancha"), Jose A. Rosa Carrasquillo ("Rosa Carrasquillo"), Hector Figueroa Torres ("Figueroa Torres"), Miguel A. Mejias Cruz ("Mejias Cruz"), and Jose A. Rohena Sosa's ("Rohena Sosa") (collectively, "Defendants") Partial Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). (Docket No. 9). For the reasons set forth below, the motion is hereby **GRANTED IN PART AND DENIED IN PART**.

**PROCEDURAL BACKGROUND**

On December 20, 2010, Rachel Hiskes ("Hiskes") and Omar Silva Melendez ("Silva Melendez") (collectively, "Plaintiffs"), filed a Complaint against several officials of the Puerto Rico Police Department ("PRPD") alleging they suffered physical and emotional damages as a consequence of Defendants' behavior during the events that took place both inside and around the Puerto Rico Capitol building on June 30, 2010. Specifically, the Complaint was filed against Figueroa Sancha, former Superintendent of the PRPD, Rosa Carrasquillo, former Associate Superintendent of the PRPD, Mejias Cruz, Commander of the San Juan Area of the PRPD, Figueroa Torres, Director of the San Juan Tactical Operations Unit of the PRPD, Rohena Sosa, an employee of or contractor with the Legislature of Puerto Rico, and against several unknown agents. (Docket No. 1). All of the above named Defendants were sued in their personal capacity. The following facts, as alleged in the Complaint, are taken as true for purposes of the Motion to Dismiss.

At the time of the events, Hiskes was a graduate student in social work at the University of Puerto Rico and worked as a journalist for Rumbo Alternativo, a digital periodical. Silva Melendez is a musician and member of the musical group Cultura Profetica.

Plaintiffs state that that the Tactical Operation Unit ("TOU") of the PRPD has engaged in proven violations of civil rights since its creation in 1974. They proceed to recount several incidents, including several recent events that involved TOU agents. After becoming Superintendent of the PRPD, Figueroa-Sancha created a tactical group dubbed "Grupo de Cien" or Special Tactical Unit ("STU") consisting of multidisciplinary teams of officers.

According to the Complaint, Defendants are aware of the history of violence against citizens and of specific incidents in which citizens were killed or injured. Plaintiffs aver that in September 2007, the former Governor created an Evaluative Committee to investigate the PRPD. This Evaluative Committee concluded that there is a pattern of violation of civil rights and made several recommendations towards improving the PRPD's disciplinary system.

The Complaint alleges that on May 20, 2010, a protest took place at a hotel where the Governor was conducting a fundraiser. According to the Complaint, a group of police officers struck protesters indiscriminately and sprayed them with pepper spray. The Complaint states that one university student was forced to the floor by several officers and was shocked several times with a taser. The Complaint further states that Rosa Carrasquillo

proceeded to kick the student in the genitals. According to Plaintiffs, Figueroa Sancha called the officers who were involved in that incident "heroes," thereby encouraging violence against purported peacefully protesting citizens.

Several days later a photojournalist was expelled from the Capitol's legislative chambers. Shortly thereafter the President of the Senate of Puerto Rico ordered the closure of the legislative chambers to the general public and the press. After several events, he issued a new order allowing media in the chambers on condition of verification of their credentials.

On June 30, 2010, the last day of the legislative session, Hiskes arrived at the Capitol along with other journalists from alternative media including Radio Huelga, IndyMedia, Rumbo Alterno and Onda Alterna. Plaintiffs allege that at the time there was no security perimeter and that Hiskes identified herself as a member of the press. According to Plaintiffs, Hiskes and others were not allowed inside the building because the legislative and PRPD officials disagreed with their views as citizens regarding the actions being taken by the government. They posit that Reverend Juan Angel Guitierrez, a representative of the watch group Amnesty International, was not allowed inside either.

It is at this point that Hiskes and three others sat down in the hallway in order to demonstrate their repudiation of the actions of the officers who violated their First Amendment rights. The Complaint states that STU officers responded by striking Hiskes and others. Plaintiffs further aver that one of the Defendants also sprayed them with noxious gas. Hiskes attempted to get up from the floor but was assaulted by a police officer. According to the Complaint, Representative Cruz-Soto attempted to aid Hiskes but was also sprayed with noxious gas and received various blows from the police. The Complaint states that Hiskes was assaulted and was pushed outside of the Capitol building and then thrown down the Capitol steps. The Complaint does not offer any further details as to what happened to Hiskes after this point.

The Complaint further states that shortly after the incident with Hiskes another group of citizens was attacked by the PRPD. A group of students who attempted to deliver a proclamation to the legislature were hit by police batons. According to Plaintiffs, as the group of students attempted to go up the Capitol steps they were met with aggression and noxious gasses. The Complaint avers that Defendants approved a protocol pursuant to which the TOU and the STU would advance against peaceful demonstrators.

Plaintiff Silva Melendez arrived in the late afternoon hours. The Complaint states that he joined the demonstrators and observed the TOU and/or the STU assaulting several female protesters. Silva Melendez alleges that he tried to assist a citizen who had been assaulted by police and was hit in the forehead by a canister thrown by a police officer from the TOU and/or the STU. He avers that the impact caused him severe pain, bleeding, and numbness in his legs, impeding him from moving effectively, as well as skin pain and burning from the gas. Silva Melendez required stitches as a result of his wound.

Plaintiffs posit that Figueroa Sancha, Rosa Carrasquillo, Mejias Cruz, and Figueroa Torres employed the TOU and the STU with full knowledge that these officers would engage in violent behavior against the protesters. Plaintiffs have advanced claims pursuant to 42 U.S.C. 1983 and 1988, as well as the First, Fourth, Fifth, and/or Fourteenth Amendments of the United States Constitution. Plaintiffs have also advanced claims pursuant to the Constitution and laws of Puerto Rico.

## STANDARD OF REVIEW

In <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." <u>Rodríguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92,

Civil No. 10-2246 (JAG)                                                    7

95-96 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559). While Twombly does not require heightened fact pleading of specifics, it does require enough facts to "nudge [plaintiff] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555.

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court upheld Twombly and clarified the principles that must guide this Court's assessment of the adequacy of the plaintiff's pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S.Ct. at 1949-50. The court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must be

Civil No. 10-2246 (JAG) 8

more than a sheer possibility and at least as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

In a recent case, Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the First Circuit analyzed and distilled several principles from the Supreme Court decisions in Twombly and Iqbal. It thus boiled down the inquiry a Court must perform while resolving a motion to dismiss under Fed.R.Civ.P. 12(b)(6) to a two-pronged approach. The first step involves the process of identifying and disregarding the threadbare recitals of the elements of a cause of action and/or the legal conclusions disguised as fact. Ocasio-Hernández, 640 F.3d at 12. The second step involves treating the non-conclusory factual allegations as true, even if seemingly incredible, and determining if those "combined allegations, taken as true, state a plausible and not merely a conceivable, case for relief." Id. (quoting Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).

The First Circuit warned that even if determining the plausibility of a claim "requires the reviewing court to draw on its judicial experience and common sense," it must not attempt to forecast the likelihood of success even if recovery is remote

and unlikely. Id. (quoting Iqbal, 129 S. Ct. at 1950) (other citations omitted). It further stated that, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the Court to draw from the facts alleged in the complaint. Id. at 13.

**ANALYSIS**

**A. Fifth Amendment**

Defendants aver that the claims submitted pursuant to the Fifth Amendment should be dismissed because said Amendment applies to federal actors. In contrast, Plaintiffs argue that it remains undetermined whether the Fourteenth or the Fifth Amendment extend procedural due process rights in Puerto Rico. See Rodríguez v. PDP, 457 U.S. 1, (1982)(stating that the Supreme Court has previously held that Puerto Rico is subject to constitutional guarantees of due process and equal protections of the law but that the Court has never found it necessary to resolve whether the guarantee of equal protection is provided under the Equal Protection Clause of the Fourteenth Amendment or the Due Process Clause of the Fifth Amendment.); Igartua v. U.S., 626 F.3d 592, 599 (1st Cir. 2010)(citing Tenoco Oil Co., Inc. v. Dep't of Consumer Affairs, 876 F.2d 1013, 1017 n. 9 (1st Cir. 1989) (noting that Puerto Rico residents are given procedural due process rights under either or both the Fifth and

Fourteenth Amendments)). However, the First Circuit has also stated that the Due Process Clause of the Fifth Amendment applies to actions of the federal government and not those of state or local governments. Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3 (1st Cir. 2007)(citing Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir.2001)).

The Court notes Plaintiffs' careful pleading in light of the lack of constitutional certainty regarding the source of procedural due process rights in Puerto Rico. However, because Plaintiffs do not allege that any of the Defendants are federal actors, the Court finds that dismissal of the Fifth Amendment claim is appropriate. See Velez-Gonzalez v. Cordero, 2011 U.S. Dist. LEXIS 53565 at *4-6 (D.P.R. May 18, 2011). Therefore, the Court **GRANTS** the dismissal of the Fifth Amendment claim.

**B. Substantive Due Process**

Defendants also object to Plaintiffs' Fourteenth Amendment claim on the ground that it is preempted by Plaintiffs' Fourth Amendment claim. Defendants argue that because Plaintiffs' Fourteenth Amendment claim is "grounded upon the same events for which they are claiming redress under the Fourth Amendment for use of unreasonable excessive force" their claim should be dismissed. (Docket No. 9).

Civil No. 10-2246 (JAG)                                              11

To establish a substantive due process claim, a plaintiff must show that a state actor deprived him or her of a life, liberty, or property interest, and that he did so through conscience-shocking behavior. Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir.2008) (citing Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008))(citations omitted).

The First Circuit has held that substantive due process claims that are in essence an excessive force claims should be brought under the Fourth amendment. Wainwright, 548 F.3d at 163. This First Circuit decision is premised upon the holding in Graham v. Connor, 490 U.S. 386, 395 (1989). In Graham, the Supreme Court stated that "[a]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of ... [the] 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a substantive due process standard." Id. at 387. This standard has also been adopted by this Court, which has, on more than one occasion, rejected claims alleging a deprivation of substantive due process based on excessive force claims. See Cruz-Acevedo v. Toledo-Davila, 660 F.Supp.2d 205, 215 (D.P.R. 2009); Brenes-Laroche v. Toledo Davila, 682 F.Supp.2d 179, 190 (D.P.R. 2010).

An individual is seized when, "by means of physical force or a show of authority, an officer restrains the liberty of a person and such person submits to the restriction feeling that he or she is not free to leave." Wainright, 548 F.3d at 167 (1st Cir. 2008) (citing United States v. Holloway, 499 F.3d 114, 117 (1st Cir. 2007)). The First Circuit held that a Fourth Amendment seizure is one where a police officer via either physical force or a show of authority restrains the liberty of a citizen in some way. Holloway, 499 F.3d at 117 (citing United States v. Sealey, 30 F.3d 7, 9 (1st Cir. 1994). Furthermore, the show of authority must be one where a reasonable person would believe that he was not free to leave. United States v. Smith, 423 F.3d 25, 28-29 (1st Cir. 2005). "The test is objective: Would a reasonable person standing in the shoes of the individual who is approached have felt free to cease interaction with the officer and depart?" United States v. Espinoza, 490 F.3d 41, 49 (1st Cir. 2007) (citing Ornelas v. United States, 517 U.S. 690, 693 (1996); Smith, 423 F.3d at 28). Furthermore, "[t]o constitute a seizure implicating the Fourth Amendment, there must be an intentional acquisition of physical control." Eldredge v. Town of Falmouth, MA, 662 F.3d 100, 105 (1s Cir. 2011)(citing Brower v. County of Inyo, 489 U.S. 593, 596 (1989))(internal citations and quotation marks omitted).

Plaintiffs vehemently argue that both their Fourth Amendment and substantive due process claims should be allowed to proceed. In support of their argument, Plaintiffs cite to County of Sacramento v. Lewis, 523 U.S. 833 (1998). However, Lewis is not entirely on point because the Supreme Court concluded that there had not been a Fourth Amendment seizure in that case. Plaintiffs further cite to Melendez-Garcia v. Sanchez, 629 F.3d 25 (1st Cir. 2010), in an effort to further support their argument. Again, this case does not deal with a Fourth Amendment claim and is therefore not wholly applicable to the controversy presently before the Court. Similarly, the other cases cited by Plaintiffs do not involve cases where Fourth Amendment seizures were discussed. See J.R. v. Gloria, 593 F.3d 73 (1st Cir. 2010); Ramos-Pinero v. Puerto Rico, 453 F.3d 48 (1st Cir. 2006). Plaintiff's cite to Maldonado v. Fontanes, 568 F.3d 263 (1st Cir. 2009), in an effort to argue that certain governmental actions could be sufficiently shocking as to be beyond the constitutional pale. The Court concluded in Maldonado that an individual's interest in his pet cat or dog constituted a Fourth Amendment seizure. However, the issue in Maldonado was the Fourth Amendment seizure of pets, not an excessive force claim under the Fourth Amendment. As a result, the Court finds that this case is also distinguishable from the issue currently before it. Lastly, Plaintiff's cite to Porter v. Osborn, 546

F.3d 1131 (9th Cir. 2008). The Osborn court allowed the parents of their deceased son to proceed with their substantive due process claims against a police officer. The Osborn court determined that the Fourth Amendment applied in constitutional claims of excessive force in cases involving claims by or on behalf of the victim himself. In Osborn, the plaintiffs advanced a substantive due process claim that hinged on the right to familial association. Thus, to conclude that this case evidences that substantive due process claims due to excessive force may proceed is therefore disingenuous.

In light of the Complaint and the facts alleged therein, the Court finds that Hiskes was in fact subjected to a Fourth Amendment seizure. As a result, the Court concludes that Hiskes' Fourteenth Amendment claim may not proceed. However, the issue is somewhat murkier as to Silva Melendez. The Complaint alleges that Silva Melendez was assisting a female protester when he was struck in the head with a gas canister. The Complaint further states that Silva Melendez was left confused and with a sense of helplessness and frustration. He had difficulty breathing, experienced a choking sensation due to the effects of the gas, and was bleeding profusely. Lastly, the Complaint states that Silva Melendez was removed from the scene by other demonstrators. Upon a close examination of the facts stated in

the Complaint, the Court finds that Silva Melendez was not subjected to a seizure on the facts alleged and as a result his Fourteenth Amendment claim is not preempted.

In light of the foregoing, the Court finds it appropriate to dismiss Hiskes' Fourteenth Amendment claim and Silva Melendez's Fourth Amendment claim.

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss. Plaintiffs' Fifth Amendment claims are hereby dismissed. Furthermore, Hiskes' substantive due process claim is also dismissed. In contrast, Silva Melendez's substantive due process claim may proceed, but his Fourth Amendment claim is dismissed. Partial judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of March, 2012.

<u>S/ Jay A. García-Gregory</u>
JAY A. GARCÍA-GREGORY
United States District Judge